## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| L.M. and M.M. o/b/o G.M., | : | Hon. Joseph H. Rodriguez |
| Plaintiffs, | : | Civil Action No. 16-3672 |
| v. | : | OPINION |
| WILLINGBORO TWP. SCH. DIST., | : | |
| Defendant. | : | |

This matter is before the Court on Plaintiffs' motion for summary judgment and to supplement the record [Doc. 16] and on Defendant's cross-motion for summary judgment and to supplement the record [Doc. 18]. Oral argument was held May 31, 2017 and the record of that proceeding is incorporated here. For the reasons placed on the record that day and those below, Plaintiffs' motion will be granted in part and denied in part and Defendant's motion will be denied.

### Factual Background & Procedural History

This essentially is an appeal of a case brought pursuant to the Individuals with Disabilities Education Act ("IDEA"), which requires that school districts that receive federal funding provide children with disabilities with a "free and appropriate education," or "FAPE." 20 U.S.C. § 1402(9). G.M., born May 10, 2008, is multiply disabled with diagnoses of neurofibromatosis type 1, a submucous cleft palate, mixed receptive-

expressive language disorder, sensory integration dysfunction, a genetic deletion (missing about 36 genes) and gastrointestinal/feeding difficulties. Because of G.M.'s multiple medical conditions, she has learning differences, global decreased muscle tone, severe speech and developmental delays, and attentional difficulties. G.M.'s parents, L.M. and M.M., have brought suit here on their daughter's behalf.

On March 8, 2012, G.M's parents requested an evaluation of G.M. by the Defendant Willingboro Township School District ("School District") in an effort to obtain special education and related services for her. An eligibility meeting was held on April 20, 2012, attended by a case manager for Defendant and the parents of G.M. The School District arranged to conduct evaluations for speech and language, an educational assessment, and a social history. On June 8, 2012, the School District conducted a basic screening for preschool eligibility, which revealed that G.M. had delayed abilities, but the screening provided no information about a child's deficits and needs. On July 31, 2012, the parents requested a more formal speech and language evaluation, but were advised such was not required for preschool because the School District relies on therapists providing speech and language, occupational, and other therapies to start working with the

student and then evaluate delays and disabilities. On August 15, 2012, the School District determined G.M. eligible for special education.

In September 2012, the parents rejected as inadequate the Individual Education Program ("IEP") offered by the School District for 2012-13; they felt that the modified regular curriculum proposed would be too difficult for G.M. because of her significant delays, and that there were many uncertainties with the program being offered. Instead, the parents elected to continue G.M.'s private placement at First Light Learning Center where she received occupational therapy, physical therapy, and speech and language therapy. The parents also provided the School District with recent evaluations they had obtained covering physical, occupational, and speech and language therapy confirming G.M.'s deficits in these areas. In May 2013, the parents retained a pediatric neuropsychologist and provided a copy of her evaluation to the School District along with medical information from a treating physician at Children's Hospital of Philadelphia.

An IEP meeting was held on September 5, 2013[1], after the school year had started, to discuss a proposed IEP for the 2013-14 school year. The IEP of September 5, 2013 proposed no related services because the School

---

[1] Parents requested an IEP meeting for 2013-14 on February 8, 2013. They followed up on March 18, 2013, May 7, 2013, July 25, 2013, August 15, 2013, and August 19, 2103.

District had not completed any evaluations. Rather, the School District again proposed to add related services later in the school year in accordance with its usual practice of having the teacher and related service providers evaluate the student's skill levels in the classroom during the school year. The parents again disagreed with the level of services to be provided and rejected the proposed IEP as inadequate. They requested independent therapy evaluations be conducted but the School District refused.

On October 14, 2013, G.M.'s parents brought a complaint for due process in New Jersey's Office of Administrative Law ("OAL") alleging that the School District failed to offer their daughter G.M. a FAPE for the 2012-13 and 2013-14 school years. Parents' due process complaint also requested that the School District fund independent educational evaluations ("IEEs") in the areas of speech and language, occupational therapy, and physical therapy.

At a November 18, 2013 settlement conference at the OAL, the parties agreed that G.M. would try the School District's program while their case proceeded; G.M. began to attend the program on January 7, 2014. Following a dispute over the independent evaluators, by Decision and Order dated February 4, 2014, Administrative Law Judge ("ALJ") John R. Futey granted partial summary decision in Plaintiffs' favor and ordered the School District

to fund IEEs of G.M. in the areas of speech and language, occupational therapy, and physical therapy. (Am. Compl. ¶¶ 19-22, Ex. A.)

Thereafter, the case moved from judge to judge in New Jersey's OAL four times until the case was assigned to the Honorable Joseph F. Martone, ALJ. The parties participated in a trial presenting witnesses and evidence for eighteen nonconsecutive hearing dates beginning in April, 2014 and concluding in April, 2015. (*Id.* ¶¶ 24-27.) On or about May 19, 2014, Defendant offered basically the same IEP for G.M.'s 2014-15 school year, and the parents again rejected it. The only change in the 2014-15 IEP as opposed to prior years was that speech therapy was increased by a half hour. As such, the parents did not believe that G.M. would receive FAPE under the 2014-15 IEP. On February 6, 2015, an Order was entered allowing Plaintiffs to amend their due process complaint to include a challenge to the 2014-15 IEP.

On or about June 22, 2015, the parties submitted written closings. Almost a full year later, by Decision and Order dated May 26, 2016, ALJ Martone found in favor of the Plaintiffs. G.M. was five-years old when the case started; she was eight-years old by the time the hearing was over and a decision issued. (*Id.* ¶ 30, Ex. B.) The OAL Order:

- Granted Plaintiffs' request for a finding that the School District failed to provide G.M. with FAPE from January 7, 2013 until the end of the 2012-13 school year; the entirety of 2013-14 and ESY 2014; 2014-15 and ESY 2015;

- Granted Plaintiffs' request for compensatory education by finding that Plaintiffs are entitled to an award of compensatory education from the School District equal to the time period during the school years 2012-13, commencing January 7, 2013; 2013-14, and 2014-15, during which the Defendant failed to provide FAPE, including ESY; and

- Granted the Plaintiffs' request for an appropriate placement by prospectively ordering the School District to place G.M. at the Durand Academy, an approved school for children with disabilities in New Jersey, including costs of related services and transportation.

(*Id.* ¶ 30, Ex. B, ¶¶ 34-39.) ALJ Martone also found that the parents' unilateral placement at First Light was not proven to address G.M.'s disabilities and therefore would not be reimbursed, even though the School District's IEPs failed to comply with the requirements for providing FAPE.

Specifically, the ALJ determined that no present levels of academic performance were provided in any of the three proposed IEPs; thus, there would have been no way to measure G.M.'s progress as to the goals and objectives in the proposed IEP. As such, there were to be no specific accommodations or modifications for G.M. until the classroom teacher had an opportunity to assess her needs. Similarly, the decision whether to provide an extended school year was to be determined at a later date. Thus,

a review of the goals and objectives in each of the three IEPs revealed that they failed to meet the requirements that there be a statement of measurable annual goals including specific short-term objectives or benchmarks against which the student's progress could be determined.

Further, School District's Child Study Team ("CST") failed to comply with the requirement to complete a comprehensive evaluation in order to determine G.M.'s eligibility for special education as required by N.J.A.C. 6A:14-2.5(a)(2). The CST failed to comply with the requirement to have the evaluations consist of a multi-disciplinary assessment in all areas of suspected disability as required by N.J.A.C. 6A:14-2.5(b)(2) and (b)(3). The CST also failed to comply with the requirement to have each evaluation include a functional assessment of the student's academic performance and, where appropriate, behavior as required by N.J.A.C. 6A:14-3.4(f)(3). Finally, the CST failed to comply with the requirement to include an evaluation by an appropriate specialist if the child is identified as possibly communication impaired, as in this case. N.J.A.C. 6A:14-3.4(a); N.J.A.C. 6A:14-3.5(c).

Because of these failures to comply with the applicable requirements, the ALJ found the IEPs proposed by the school district to be deficient, as they failed to establish the rationale for the student's educational placement and services and for program implementation. Accordingly, because of the

serious failures on the part of the School District to comply with IDEA requirements for evaluation, identification, classification of G.M. as a student with disabilities and the serious deficiencies noted with respect to the IEP, the ALJ found that the program and placement offered by the School District to G.M. also failed to provide FAPE to G.M. because they failed to establish the rationale for the student's educational placement and services and for program implementation.

On June 23, 2016, Plaintiffs filed this action requesting that this Court find that they are prevailing parties under 20 U.S.C. § 1415(i)(3)(B) and 29 U.S.C. § 794(a)(2) at both the administrative level and before this Court, and as such are entitled to reasonable attorney's fees, costs, and expert costs under the IDEA and Section 504 of the Rehabilitation Act. (*Id.* ¶¶ 31-35, p. 15.) Next, Plaintiffs request that this Court find that the ALJ erred when he determined that the School District did not provide FAPE for the 2012-13 school year, but only awarded compensatory education from January 7, 2013 forward instead of from the start of that school year. (Am. Compl. ¶¶ 36-42.) Third, Plaintiffs request that this Court allow them to supplement the record pursuant to 20 U.S.C. § 1415(i)(2)(A) and award G.M. compensatory education for the 2015-16 school year, as the IEP and program for that year was nearly identical to the one the Defendant

proposed in 2012-13, 2013-14, and 2014-15, all of which the ALJ found to be inadequate and not in accordance with the law. (*Id.* ¶¶ 43-50.) Plaintiffs also ask this Court to calculate the hours of compensatory education awarded to G.M. in terms of a dollar amount, and order that the funds be placed into a trust fund for G.M.'s benefit so that the parents could use the funds to obtain appropriate educational and rehabilitative services for G.M. (*Id.* ¶¶ 51-62.)

On July 11, 2016, instead of filing a counterclaim, the School District filed a separate action in this Court appealing the OAL's ruling, *Willingboro Township School District v. L.M. and M.M. o/b/o G.M.,* Docket Number 1:16-cv-04160. This Court granted Plaintiffs' Motion to Consolidate the two cases. The School District asks that this Court reverse all of the OAL's findings, alleging that finding in Plaintiffs' favor was error because the IEPs offered constituted FAPE. Alternatively, Defendant argues that because the parents have not enrolled G.M. in Durand, but elected to place G.M. in Orchard Friends Academy for 2016-17, they have been uncooperative and, therefore, there is a genuine issue of material fact at least regarding placement of the child. On this issue, Defendant has sought to supplement the record.

**Summary Judgment Standard**

"Summary judgment is proper if there is no genuine issue of material fact and if, viewing the facts in the light most favorable to the non-moving party, the moving party is entitled to judgment as a matter of law." *Pearson v. Component Tech. Corp.*, 247 F.3d 471, 482 n.1 (3d Cir. 2001) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986)); *accord* Fed. R. Civ. P. 56 (a). Thus, the Court will enter summary judgment in favor of a movant who shows that it is entitled to judgment as a matter of law, and supports the showing that there is no genuine dispute as to any material fact by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations . . . admissions, interrogatory answers, or other materials." Fed. R. Civ. P. 56 (c)(1)(A).

An issue is "genuine" if supported by evidence such that a reasonable jury could return a verdict in the nonmoving party's favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A fact is "material" if, under the governing substantive law, a dispute about the fact might affect the outcome of the suit. *Id.* In determining whether a genuine issue of material fact exists, the court must view the facts and all reasonable inferences drawn

from those facts in the light most favorable to the nonmoving party.

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

Initially, the moving party has the burden of demonstrating the absence of a genuine issue of material fact. *Celotex*, 477 U.S. at 323. Once the moving party has met this burden, the nonmoving party must identify, by affidavits or otherwise, specific facts showing that there is a genuine issue for trial. *Id.*; *Maidenbaum v. Bally's Park Place, Inc.*, 870 F. Supp. 1254, 1258 (D.N.J. 1994). Thus, to withstand a properly supported motion for summary judgment, the nonmoving party must identify specific facts and affirmative evidence that contradict those offered by the moving party. *Anderson*, 477 U.S. at 256-57. "A nonmoving party may not 'rest upon mere allegations, general denials or . . . vague statements . . . .'" *Trap Rock Indus., Inc. v. Local 825, Int'l Union of Operating Eng'rs*, 982 F.2d 884, 890 (3d Cir. 1992) (quoting *Quiroga v. Hasbro, Inc.*, 934 F.2d 497, 500 (3d Cir. 1991)). Indeed,

> the plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.

*Celotex*, 477 U.S. at 322. That is, the movant can support the assertion that a fact cannot be genuinely disputed by showing that "an adverse party cannot

produce admissible evidence to support the [alleged dispute of] fact." Fed. R. Civ. P. 56(c)(1)(B); *accord* Fed. R. Civ. P. 56(c)(2).

In deciding the merits of a party's motion for summary judgment, the court's role is not to evaluate the evidence and decide the truth of the matter, but to determine whether there is a genuine issue for trial. *Anderson*, 477 U.S. at 249. Credibility determinations are the province of the factfinder. *Big Apple BMW, Inc. v. BMW of N. Am., Inc.*, 974 F.2d 1358, 1363 (3d Cir. 1992).

## Standard of Review under IDEA

In deciding an appeal from the decision of an Administrative Law Judge, this Court must apply a "modified *de novo*" standard of review. *D.S. v. Bayonne Bd. of Educ.*, 602 F.3d 553, 564 (3d Cir. 2010). The party challenging an administrative decision bears the burden of persuasion and "faces the additional hurdle of overcoming a presumption that the [ALJ's] findings were correct." *Andrew M. v. Delaware Cnty. Office of Mental Health & Mental Retardation*, 490 F.3d 337, 345 (3d Cir. 2007).

That is, this court must give "due weight" to the factual findings of the administrative proceedings. *D.S.*, 602 F.3d at 564*; see also Moorestown Twp. Bd. of Educ. v. S.D.*, 811 F. Supp.2d 1057, 1064 (D.N.J. 2011); *Shore Reg'l High Sch. Bd. of Ed. v. P.S.*, 381 F.3d 194, 199 (3d Cir. 2004); *S.H. v.*

*State Operated Sch. Dist. of the City of Newark*, 336 F.3d 260, 269-70 (3d Cir. 2003). Because "factual findings from the administrative proceedings are to be considered prima facie correct," the reviewing court must justify failure to adhere to those findings. *Shore Reg'l,* 381 F.3d at 199 (quoting *S.H.*, 336 F.3d at 271).

This Court must accept the ALJ's credibility determinations unless the non-testimonial, extrinsic evidence in the record would justify a contrary conclusion. *Shore Reg'l,* 381 F.3d at 200; *Moorestown,* 811 F. Supp. at 1064; *D.S.,* 602 F.3d at 564. "[I]n this context, the word 'justify' requires that the applicable standard of review be essentially the same as that a federal appellate court applies when reviewing a trial court's findings of fact." *D.S.,* 602 F.3d at 564 (citing *Shore Reg'l*, 381 F.3d at 194). Federal appellate courts review district courts' factual findings for clear error. *VICI Racing, LLC v. T-Mobile USA, Inc.*, 763 F.3d 273, 283 (3d Cir. 2014). "A finding of fact is clearly erroneous when it is 'completely devoid of minimum evidentiary support displaying some hue of credibility or bears no rational relationship to the supportive evidentiary data.'" *Id.* (quoting *Berg Chilling Sys., Inc. v. Hull Corp.*, 369 F.3d 745, 754 (3d Cir. 2004)).

## Analysis

The primary purpose of the IDEA is "to ensure that all children with disabilities have available to them a free appropriate public education [FAPE] that emphasizes special education and related services designed to meet their unique needs." 20 U.S.C. § 1400(d)(1). Thus, schools in states that receive federal funding must provide "personalized instruction with sufficient support services to permit the child to benefit educationally from that instruction." *Bd. of Educ. of Hendrick Hudson Cent. Sch. Dist. v. Rowley*, 458 U.S. 176, 203 (1982). The Third Circuit has further interpreted this provision to require the educational program to provide special education students with meaningful educational benefits. *Polk v. Cent. Susquehanna Intermediate Unit 16*, 853 F.2d 171, 184 (3d Cir. 1988). "'The provision of merely more than a trivial educational benefit' is insufficient." *Ridley Sch. Dist. V. M.R.*, 680 F.3d 260, 269 (3d Cir. 2012) (quoting *L.E. v. Ramsey Bd. of Educ.*, 435 F.3d 384, 390 (3d Cir. 2006)).

School districts implement a FAPE by designing an IEP for each special education student. 20 U.S.C. § 1414(d). The Third Circuit has described the IEP as "the 'centerpiece' of the IDEA's system for delivering education to disabled children." *D.S.*, 602 F.3d at 557 (quoting *Polk*, 853 F.2d at 173). State educational authorities are required to "identify and

evaluate disabled children, § 1414(a)-(c), develop an IEP for each one, § 1414(d)(2), and review every IEP at least once a year, § 1414(d)(4)." *Schaffer v. Weast*, 546 U.S. 49, 53 (2005). The IEP must be "reasonably calculated to enable the child to receive meaningful educational benefits in light of the student's intellectual potential." *D.S.*, 602 F.3d at 557 (quotations and citations omitted). The Supreme Court has explained:

> The 'reasonably calculated' qualification reflects a recognition that crafting an appropriate program of education requires prospective judgment by school officials. The Act contemplates that this fact-intensive exercise will be informed not only by the expertise of school officials, but also by the input of the child's parents or guardians. Any review of an IEP must appreciate that the question is whether the IEP is *reasonable*, not whether the court regards it as ideal.

*Endrew F. v. Douglas Cty. Sch. Dist.*, --- U.S. ---, 137 S. Ct. 988, 999, 197 L. Ed. 2d 335 (2017) (internal citations omitted). "To meet its substantive obligation under the IDEA, a school must offer an IEP reasonably calculated to enable a child to make progress appropriate in light of the child's circumstances." *Id.*

The IEP must include: (1) a statement of the child's present levels of academic achievement and functional performance; (2) a statement of measurable annual goals, including academic and functional goals; (3) a description of how the child's progress toward meeting the annual goals will be measured and when periodic reports on the progress the child is making

toward meeting the annual goals will be provided; (4) a statement of the special education and related services and supplementary aids and services, based on peer-reviewed research to the extent practicable, to be provided to the child, or on behalf of the child, and a statement of the program modifications or supports for school personnel that will be provided for the child; (5) an explanation of the extent, if any, to which the child will not participate with nondisabled children in the regular class and in other activities; (6) a statement of any individual appropriate accommodations that are necessary to measure the academic achievement and functional performance of the child on State and district-wide assessments; and (7) the projected date for the beginning of the services and necessary modifications, and the anticipated frequency, location, and duration of those services and modifications. 20 U.S.C. § 1414(d)(1)(A). A school district should have a fully developed IEP in place at the beginning of each school year. 20 U.S.C. § 1401(9)(D); 1412(a)(1) and 1414(d)(2); *C.H. v. Cape Henlopen Sch. Dist.* 606, F.3d 59, 68 (3d Cir. 2010).

To compensate for past violations, "[a]ppropriate remedies under IDEA are determined on a case-by-case basis." *D.F. v. Collingswood Bd. of Educ.*, 694 F.3d 488, 498 (3d Cir. 2012). "Compensatory education is crucial . . . and the courts, in the exercise of their broad discretion, may award it to

whatever extent necessary to make up for the child's lost progress and to restore the child to the educational path he or she would have traveled but for the deprivation." *G.L. v. Ligonier Valley Sch. Dist. Auth.*, 802 F.3d 601, 625 (3d Cir. 2015) (citing *D.F.,* 694 F.3d at 498-99). "The remedy of compensatory education is available only where a student's substantive rights are affected by a school district's non-compliance with the IDEA." *D.K. v. Abington Sch. Dist.*, 696 F.3d 233, 249 (3d Cir. 2012). "Accordingly, '[a] procedural violation is actionable under the IDEA only if it results in a loss of educational opportunity for the student, seriously deprives parents of their participation rights, or causes a deprivation of educational benefits.'" *Ridley Sch. Dist. v. M.R.,* 680 F.3d 260, 274 (3d Cir. 2012) (quoting *D.S.,* 602 F.3d at 565). "One accepted form of compensatory education relief is the establishment of a fund to be spent on the child's education." *D.F.,* 694 F.3d at 498.

In this case, the School District has not shown that the ALJ's finding that the IEPs were inappropriate constituted clear error. Rather, the record supports the ALJ's finding that the School District did not provide G.M. with FAPE during the relevant school years. Plaintiffs' witnesses' testimony provided ALJ Martone with a basis to determine that the IEPs at issue did not provide FAPE for G.M. This Court finds no reason not to accept the

ALJ's credibility determinations in favor of Plaintiffs' witnesses and expert reports, as opposed to those of the defense.

In the same vein, the Court does not find clear error in ALJ Martone's finding that compensatory education would be awarded commencing January 7, 2013. "'A disabled student's right to compensatory education accrues when the school knows or should know that the student is receiving an inappropriate education.'" *P.P. v, West Chester Area Sch. Dist.,* 585 F.3d 727, 739 (3d Cir. 2009) (quoting *Lauren W. v. DeFlaminis,* 480 F.3d 259, 272 (3d Cir. 2007)). When a school fails to correct a situation in which a disabled student "is not receiving more than a *de minimis* educational benefit," the "child is entitled to compensatory education for a period equal to the period of deprivation, excluding only the time reasonably required for the school district to rectify the problem." *M.C. v. Cent. Reg'l Sch. Dist.,* 81 F.3d 389, 391-92 (3d Cir. 1996).

Regarding the 2014-15 school year, the ALJ did not "reverse himself" or represent that he would not consider the applicable IEP. Rather, he limited the discovery of new evidence or testimony regarding G.M.'s progress during the 2014-15 school year, but evaluated whether the 2014-15 IEP provided FAPE by looking at the design of the IEP itself to determine whether it met IDEA's procedural and substantive requirements.

As to 2015-16, the Court will not make the initial determination as to the propriety of the School District's IEP. The IDEA provides that, in any action brought pursuant to § 1415(e)(2), the district court "shall hear additional evidence at the request of a party" and, "basing its decision on the preponderance of the evidence, shall grant such relief as the court determines is appropriate." 20 U.S.C. § 1415(i)(2)(C)(ii); accord 34 C.F.R. § 300.516(c)(2). "[T]he question of what additional evidence to admit in an IDEA judicial review proceeding, as well as the question of weight due to the administrative findings of fact, should be left to the discretion of the trial court." *Susan N. v. Wilson School Dist.*, 70 F.3d 751, 760 (3d Cir. 1995).

"Additional evidence" does not refer to all evidence, but rather to evidence that properly supplements the administrative record. *Susan N.*, 70 F.3d at 759. The Third Circuit Court of Appeals has stated that "a district court first must evaluate a party's proffered evidence before deciding to exclude it." *Id.* While a district court appropriately may exclude additional evidence, a court must exercise particularized discretion in its rulings. When exercising this discretion, the court should be mindful of the IDEA's "general framework of deference to state decision-makers." *Antoine M. v. Chester Upland Sch. Dist.*, 420 F.Supp.2d 396, 402 (E.D. Pa. 2006) (quoting *Susan N.*, 70 F.3d at 758). "[I]n determining whether to admit the

proffered additional evidence," the question for a district court is "would the evidence assist the court in ascertaining whether Congress's goal has been and is being reached for the child involved." *Id.* at 760. In this regard, the trial court's focus should be on allowing evidence that is "relevant, non-cumulative and useful." *Id.*

Before admitting additional evidence, "a court must determine whether the party introducing the additional evidence has presented a sufficient justification for not proffering the evidence at the administrative hearing." *Antoine M.*, 420 F.Supp.2d at 403 (citing *Susan N.*, 70 F.3d at 760). Factors that a court may consider in deciding whether to admit additional evidence include (1) whether a procedural bar prevented the introduction of the evidence at the administrative hearing; (2) whether the party seeking admission of the evidence deliberately withheld it at the hearing; (3) whether the introduction of the additional evidence would be prejudicial to the opposing party; and (4) the potential impact of the admission of the evidence on the administration of justice. *Id.*

Plaintiffs have asked this Court to consider the 2015-16 IEP issued on June 4, 2015 and School District evaluations conducted in 2016 in the areas of psychological, educational, speech and language, physical therapy, and occupational therapy to determine that the 2015-16 IEP did not provide

FAPE for G.M. While there is no barrier to the admissibility of this non-cumulative evidence, it is this Court's ruling, in light of the IDEA's general framework of deference to state decision-makers and out of caution for Defendant's right to due process, that it will not make a determination regarding the 2015-16 IEP in the first instance.

Similarly, the Court will not allow the record to be supplemented by the defense to include any information regarding G.M.'s current placement for 2016-17 at Orchard Friends Academy. The School District's argument that the parents' conduct creates a "new" dispute of fact to preclude summary judgment is rejected as irrelevant to the ALJ's decision regarding the 2012-15 IEPs' failure to provide FAPE.

The ALJ's order provided G.M. with full days of compensatory education from January 7, 2013 through the end of the 2012-2013 school year (109 days), ESY 2013 (20 days), 2013-2014 school year (182 days), ESY 2014 (20 days), 2014-2015 school year (182 days), and ESY 2015 (20 days). With 6.5 hours in each school day during the school year and 4 hours per day for the extended school year, this totals 3,314.5 hours of compensatory education. At the rate of $80 per hour, Defendant is to place $265,160 into a trust for G.M.'s reasonable educational, rehabilitative, therapeutic or recreational program provider at Plaintiffs' election.

Finally, it is clear that Plaintiffs are prevailing parties under the IDEA, 20 U.S.C. § 1415, at both the administrative level and before this Court and are entitled to reasonable counsel fees and costs under the IDEA and Section 504 of the Rehabilitation Act. Counsel should file an appropriate fee and cost application for the Court's consideration.

## Conclusion

For these reasons, as well as those placed on the record during oral argument, the Defendant's motion for summary judgment and to supplement the record is denied. Plaintiffs' motion for summary judgment is granted in part in that the Court will order the Defendant to pay an appropriate amount for each hour of compensatory education placed into a trust for Parents to use for G.M.'s reasonable educational, rehabilitative, therapeutic or recreational program provider at Plaintiffs' own election for the school years 2012-13, commencing January 7, 2013; 2013-14, and 2014-15, during which the Defendant failed to provide FAPE, including ESY. Plaintiffs are prevailing parties. Plaintiffs' motion is denied insofar as it sought to expand the award of compensatory education. An Order will be entered.

Dated: June 12, 2017                              /s/ Joseph H. Rodriguez
                                                         JOSEPH H. RODRIGUEZ
                                                         U.S.D.J.